United States District Court
Northern District of California

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8          NORTHERN DISTRICT OF CALIFORNIA

9

10  ARVILLE WINANS, by and through            ) Case No. 13-cv-03962-SC
    his guardian ad litem, RENEE             )
11                                           ) ORDER GRANTING IN PART AND
    MOULTON, on his own behalf and on        ) DENYING IN PART MOTION TO
12  behalf of other similarly               ) DISMISS; DENYING MOTION TO
    situated,                                ) STRIKE
13                                           )
14          Plaintiff,                       )
                                             )
15  v.                                       )
                                             )
16                                           )
    EMERITUS CORPORATION and DOES 1          )
17  through 100,                             )
                                             )
18          Defendants.                      )
                                             )
19  _____

20  I.   **INTRODUCTION**

21      Plaintiff Arville Winans ("Plaintiff") brings this action for

22  declaratory and injunctive relief and damages against Defendant

23  Emeritus Corporation ("Defendant") by and through his guardian ad

24  litem Renee Moulton.  Plaintiff is a resident of one of Defendant's

25  assisted living facilities in Tracy, California.  He alleges that

26  Defendant has engaged in a scheme to defraud seniors by falsely

27  representing that it will provide sufficient staff to care for all

28  of its residents based on the residents' evaluations, "when in

**United States District Court**
For the Northern District of California

1   truth [Defendant] determines facility staffing based on labor

2   budgets set to meet profit margins established by corporate

3   headquarters."  ECF No. 24 (First Amended Complaint ("FAC")) ¶ 2.

4   Defendant now moves to dismiss and strike Plaintiff's FAC.  ECF

5   Nos. 32 ("MTD"), 34 ("MTS").  Both motions are fully briefed.  ECF

6   Nos. 43 ("MTS Opp'n"), 44 ("MTD Opp'n"), 46 ("MTS Reply"), 47 ("MTD

7   Reply").[1]  The Court finds the matter appropriate for resolution

8   without oral argument per Civil Local Rule 7-1(b).  As explained

9   below, Defendant's motion to dismiss is GRANTED in part and DENIED

10  in part, and Defendant's motion to strike is DENIED.


12  **II.   BACKGROUND**

13       Defendant is the largest provider of assisted living for

14  senior citizens in the nation.  FAC ¶ 15.  It operates 72

15  facilities in California alone, which have an aggregate of 5,000

16  residents.  Id. ¶ 10.  Defendant's assisted living facilities offer

17  room, board, and assistance for seniors in certain activities of

18  daily living.  Id. ¶ 16.  These facilities also have "memory care

19  units," which serve individuals with dementia and other cognitive

20  disorders.  Id. ¶ 17.  Plaintiff is a senior citizen and has been a

21  resident of one of Defendant's facilities since October 2009.  Id.

22  ¶ 8.  Ms. Moulton, his niece, is his agent, having been granted his

23  power of attorney in September 2009.  Id.

24       In its uniform contract with each resident, Defendant

---

[1] Plaintiff has also filed an administrative motion for leave to file a surreply to address new choice-of-law arguments raised in Defendant's reply brief.  ECF No. 49 ("Admin. Mot."), 49-1 ("Surreply").  Defendant has opposed the administrative motion. ECF No. 52.  The Court GRANTS the motion, but the surreply does not change the ultimate disposition of the motion to dismiss.

**United States District Court**
For the Northern District of California

represents that it will evaluate the resident prior to admission and assign the resident a "Level of Care" from 1 to 7, with higher monthly charges imposed for higher levels of care.[2]  Id. ¶¶ 21-22. The uniform contract also represents that Defendant will periodically re-evaluate each resident to determine if he or she requires additional assistance.  Id. ¶ 23.  If so, Defendant may assign the resident a higher Level of Care and collect additional monthly charges.  Id.  Defendant conducts these periodic re-evaluations using its "wE Care" system, which was previously called "Vigilan."  Id.

Using the wE Care system, Defendant has repeatedly increased Plaintiff's Level of Care, along with his monthly rate.  In September 2010, Defendant assigned Plaintiff a Level of Care of "3" and placed him in the Alzheimer's and Memory Care Unit.  Id. ¶ 55. Defendant increased Plaintiff's Level of Care to "4" in September 2012, and then to a "5" in May 2013.  Id. ¶¶ 56-57.  Each change to Plaintiff's Level of Care has resulted in a new agreement, signed by Ms. Moulton on behalf of Plaintiff, and a higher monthly rate. Id. ¶¶ 55-58.  Since his arrival at Defendant's facility in 2009, Plaintiff's monthly rate has increased from approximately $1,200 to $2,800.  Id. ¶ 58.

Defendant touts the wE Care system through its marketing materials.  See id. ¶ 27-32.  Defendant's website states that "[t]he ability to provide the most comprehensive and consistent

---

[2] Defendant argues that its contracts are not uniform, MTD at 1, but at the pleading stage, the Court must take all well-pleaded allegations as true.  Defendant also contends that Plaintiff concedes that the contracts are not uniform by alleging that each resident negotiates an individual care plan.  Id.  However, this does not preclude the possibility that Defendant makes uniform representations in each of its contracts.

United States District Court
For the Northern District of California

personal care services begins with the resident evaluation process," that wE Care allows Defendant "to accurately evaluate and monitor the personal care services of your loved one," and that wE Care is used to determine the "staff required to deliver the services." Id. ¶¶ 27-28. Another unidentified marketing material states that Defendant's resident evaluation system will: "address the time needed to complete care activities, how often those care activities need to be done, any personal preferences that you . . . may have, and the staff required to complete the activities." Id. ¶ 32.

Plaintiff alleges that these representations are false and misleading because Defendant staffs its facilities based on profit margins, without regard for resident need. Specifically, Plaintiff pleads: "Contrary to the express and implied representations in its form contract and other uniform written statements, [Defendant] does not staff its facilities to meet the aggregate assessed needs of its residents, but instead determines staffing based on labor budgets designed to meet profit objectives." Id. ¶ 33. Plaintiff points to deposition testimony of Susan Rotella, Defendant's former Vice President of Operations, who has sued Defendant for wrongful termination. Id. ¶ 36. Rotella testified that wE Care was used to assign residents a Level of Care and corresponding monthly rates, but the portion of the software program that calculated how many minutes per day of care and what number and type of staff were necessary to provide that care were turned off at the facility level. Id. ¶ 37.

In support of his understaffing allegations, Plaintiff also alleges that, in or around January 2011, he was attacked by another

resident when they were left unsupervised in a dining area.  Id. ¶

59.  As a result of the attack, Plaintiff suffered multiple cuts

and bruises to his face and head, and the facility was issued a

deficiency for inadequate staff and insufficient resident

supervision by the Community Care Licensing ("CCL") division of the

California Department of Social Services ("CDSS").  Id.  On

information and belief, Plaintiff alleges that a number of

Defendant's other facilities have also been cited for inadequate

staffing by CDSS.  Id. ¶ 60.

Plaintiff filed this action in state court on July 29, 2013.

ECF No. 1 Ex. A.  Defendant subsequently removed to federal court

on diversity grounds.  ECF No. 1.  After Defendant filed a motion

to dismiss, Plaintiff amended his complaint.  ECF Nos. 18, 24.  The

FAC asserts claims for (1) violation of the California Consumers

Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (2)

violation of the California Unfair Competition Law ("UCL"), id. §

17200 et seq.; and (3) elder financial abuse, Cal. Welf. & Inst.

Code § 15610.30.  FAC ¶¶ 73-114.  Among other things, Plaintiff

seeks restitution, punitive damages, and an injunction prohibiting

Defendant from "promising elders, dependent adults, and their

family members that [Defendant] will provide the care and personal

services needed by each resident as assessed in their comprehensive

evaluation and from charging its residents based on this false

promise."  Id. pg. 30.  Plaintiff also seeks an injunction

"requiring Defendant to budget for and provide adequate aggregate

staffing that is sufficient to meet its residents' assessed needs."

Id.  Plaintiff, through Ms. Moulton, seeks to represent all persons

who resided at one of Defendant's California assisted living

1 facilities from July 29, 2009 through the present.  Id. ¶ 62.

2 Defendant now moves to dismiss pursuant to Federal Rule of

3 Civil Procedure 12(b)(6), as well as to strike Plaintiff's class

4 action allegations pursuant to Rule 12(f).

5

6 **III. <u>MOTION TO DISMISS</u>**

7 **A.   <u>Legal Standard</u>**

8 A motion to dismiss under Federal Rule of Civil Procedure

9 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

10 <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

11 on the lack of a cognizable legal theory or the absence of

12 sufficient facts alleged under a cognizable legal theory."

13 <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

14 1988).  "When there are well-pleaded factual allegations, a court

15 should assume their veracity and then determine whether they

16 plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>

17 <u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

18 must accept as true all of the allegations contained in a complaint

19 is inapplicable to legal conclusions.  Threadbare recitals of the

20 elements of a cause of action, supported by mere conclusory

21 statements, do not suffice." Id. (citing <u>Bell Atl. Corp. v.</u>

22 <u>Twombly</u>, 550 U.S. 544, 555 (2007)).

23 Claims sounding in fraud are subject to the heightened

24 pleading requirements of Federal Rule of Civil Procedure 9(b),

25 which requires that a plaintiff alleging fraud "must state with

26 particularity the circumstances constituting fraud." See <u>Kearns v.</u>

27 <u>Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy

28 Rule 9(b), a pleading must identify the who, what, when, where, and

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

how of the misconduct charged, as well as what is false or
misleading about [the purportedly fraudulent] statement, and why it
is false." <u>United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,
Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and
citations omitted).

### B.   <u>Plaintiff's Claims for Equitable Relief</u>

Citing to California law, Defendant argues that the Court
should abstain from adjudicating Plaintiff's claims for equitable
relief because they require the Court to assume the functions of
CDSS.  MTD at 4 (citing <u>Alvarado v. Selma Convalescent Hosp.</u>, 153
Cal. App. 4th 1292 (Cal. Ct. App. 2007)).  Under California law,
courts may abstain from deciding UCL claims where: (1) they
implicate complex economic or policy decisions best handled by the
legislature or an administrative agency; or (2) granting injunctive
relief would impose an undue burden on the trial court.  <u>See
Alvarado</u>, 153 Cal. App. 4th at 1298.  Plaintiff contends that
federal law controls here, not California law.  MTD Opp'n at 5.
Specifically, Plaintiff contends that the Court should apply the
abstention doctrine set forth in <u>Colorado River Water Conservation
District v. United States</u>, 424 U.S. 800, 813, 817 (1976), which
provides that federal courts have a "virtually unflagging
obligation to exercise jurisdiction," and that courts should only
abstain in extraordinary and narrow circumstances.  <u>Id.</u> at 5-6.
Plaintiff further argues that, even under California law, the Court
should decline from abstaining.  <u>Id.</u> at 7-8.

As set forth below, the Court finds that (1) choice of law
principles require it to consider the California abstention
doctrine, and (2) the California abstention doctrine bars

**United States District Court**
For the Northern District of California

1  Plaintiff's claims for equitable relief.

2      **1.   <u>Choice of Law</u>**

3      Under <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), a federal

4  court sitting in diversity jurisdiction applies state substantive

5  law and federal procedural law.  An issue is procedural if it is

6  "concerned with judicial administration, such as the methods of

7  presenting facts to a court or the way a jury operates." <u>Sims</u>

8  <u>Snowboards, Inc. v. Kelly</u>, 863 F.2d 643, 645 (9th Cir. 1988).  An

9  issue is substantive if it is "concerned with the legal rights of

10  the parties." <u>Id.</u>  While the distinction between substantive and

11  procedural law is not always clear, the intent of <u>Erie</u> is to ensure

12  that, in diversity cases, "the outcome of the litigation in the

13  federal court should be substantially the same, so far as legal

14  rules determine the outcome of a litigation, as it would be if

15  tried in a State court." <u>Guar. Trust Co. v. York</u>, 326 U.S. 99, 109

16  (1945).

17      In <u>Sims</u>, the Ninth Circuit addressed the issue of whether a

18  California anti-injunction statute was procedural or substantive.

19  863 F.2d at 645.  The statute, California Civil Code section 3423,

20  bars an injunction to prevent the breach of a personal service

21  contract, unless the contract guarantees annual payments of at

22  least $6,000.  The district court found that, even if section 3423

23  were applicable, Federal Rule of Civil Procedure 65 allowed the

24  grant of temporary injunctive relief. <u>Id.</u> at 646.  The Ninth

25  Circuit reversed.  The court found that Rule 65 and section 3423

26  did not conflict because the former "merely sets out the procedural

27  requirements for injunctions and restraining orders," while the

28  latter "expressly prohibits the issuance of injunctions in this

United States District Court
For the Northern District of California

1  type of contract dispute." Id.  The court then held that because
2  of lack of conflict, Erie "require[d] the application of state law
3  over federal law if the state law is outcome-determinative." Id.
4  The Court concluded that section 3423 was outcome-determinative
5  because an injunction would accomplish what California law
6  prohibited, and that California policy should be respected by
7  federal courts sitting in diversity.  Id. at 647.

8      Plaintiff argues that Sims is inapposite because the Ninth
9  Circuit did not "consider generally whether injunctive relief is a
10 substantive or procedural issue." MTD Surreply at 2.  That may be
11 so, but Sims does hold that federal courts sitting in diversity
12 must defer to state law on issues of injunctive relief where the
13 state law is outcome-determinative.  Here, California's abstention
14 doctrine has the potential to determine the outcome of Plaintiff's
15 claims for equitable relief.  Moreover, under Plaintiff's theory, a
16 federal court applying California law could grant an injunction,
17 where a California court applying California law could not.  This
18 is plainly contrary to Sims, as well as Erie.  The fact that
19 Defendant removed to federal court should not affect the remedies
20 available to Plaintiff.

21     Plaintiff further argues that, unlike the anti-injunction
22 statute in Sims, the California judicial abstention doctrine does
23 not mandate that the Court abstain from granting equitable relief.
24 This argument is also unavailing.  While Plaintiff is correct that
25 the application of the abstention doctrine is discretionary, see
26 Alvarado, 153 Cal. App. 4th at 1298, that does not mean the
27 doctrine is not substantive or outcome-determinative.  Neither the
28 Ninth Circuit nor the Supreme Court has enunciated the rule

**United States District Court**
For the Northern District of California

1 Plaintiff is advocating here: that an issue is necessarily

2 procedural where it turns on the application of a discretionary

3 rule.

4     Plaintiff's reliance on <u>Travelers Casualty v. W.P. Rowland</u>

5 <u>Constructors Corp.</u>, No. CV 12-00390-PHX-FJM, 2012 WL 1718630 (D.

6 Ariz. May 15, 2012), is also misplaced.  <u>See</u> Surreply at 3.  The

7 case is not binding on this court and, in any event, it is

8 distinguishable.  In <u>Travelers</u>, the court applied federal law

9 rather than state law because the issue presented was purely

10 procedural: should the court apply Rule 65 or Arizona law to

11 determine the appropriate standard for granting a preliminary

12 injunction.  2012 WL 1718630, at *2.  Indeed, the court

13 distinguished <u>Sims</u> because both federal and Arizona law permitted

14 it to issue the type of injunctive relief requested by the

15 plaintiff.  <u>Id.</u>  In contrast, in this action, California's

16 abstention doctrine imposes limits on equitable relief not present

17 in the federal <u>Colorado River</u> abstention doctrine.

18     Plaintiff's final argument conflates federal and state

19 abstention doctrines.  Plaintiff cites to <u>AXA Corporate Solutions</u>

20 <u>v. Underwriters Reinsurance Corp.</u>, where the Seventh Circuit

21 addressed whether the trial court had erred in applying an Illinois

22 statute allowing a Defendant to move to dismiss if there is another

23 action pending between the same parties for the same cause.  347

24 F.3d 272, 276 (7th Cir. 2003) (citing 735 Ill. Comp. Stat. § 5/2-

25 619(a)(3)).  The trial court reasoned that the differences between

26 the <u>Colorado River</u> abstention doctrine and the Illinois statute

27 were sufficient to require the court to follow the state law.  <u>Id.</u>

28 at 276.  The Seventh Circuit reversed, finding that the state

United States District Court
For the Northern District of California

1  statute was procedural.  Id. at 278.  The court reasoned that the

2  problem addressed by the state law was closely akin to topics such

3  as forum non conveniens and venue statutes, which were matters of

4  judicial organization.  Id.  AXA is inapposite because California's

5  abstention doctrine is significantly different from the Illinois

6  and federal abstention doctrines.  The California doctrine does not

7  require the Court to abstain from exercising jurisdiction or

8  hearing a case altogether.  It merely limits the types of claims

9  that a Plaintiff may assert based on a balancing of the equities.

10 See Acosta v. Brown, 213 Cal. App. 4th 234, 246-47 (Cal. Ct. App.

11 2013).  Accordingly, the California abstention doctrine is not

12 procedural in nature.[3]

13     For these reasons, the Court finds that California law

14 controls the issue of whether Plaintiff is entitled to the

15 equitable relief it seeks.

16          **2.   Abstention**

17     As California law controls, the Court must determine to what

18 extent, if any, the California judicial abstention doctrine bars

19 Plaintiff's claims.  The doctrine gives courts the discretion to

20 abstain from deciding UCL claims and other claims for equitable

21 relief.  See Alvarado, 153 Cal. App. 4th at 1297 (abstention

22 applies to UCL claims); see also Acosta v. Brown, 213 Cal. App. 4th

23 at 249 ("The absence of [a UCL] claim does not diminish the force

24 of the principles upon which Alvarado rests because . . . the

25 relief sought in this case . . . is in the nature of equitable

26

27 [3] Plaintiff's position is also contrary to its own authority.  See
   Wehlage v. EmRes Healthcare, Inc., 791 F. Supp. 2d 774 (N.D. Cal.

28 2011) (considering the merits of the defendant's California
   abstention argument).

relief."). However, the abstention doctrine may not be used to refrain from adjudicating legal claims. See Walsh v. Kindred Healthcare, 798 F. Supp. 2d 1073, 1085 (N.D. Cal. 2011). Accordingly, the doctrine only implicates Plaintiff's UCL claim, as well as the equitable remedies sought in connection with Plaintiff's CLRA claim.[4]  It does not affect Plaintiff's claims for money damages.

Judicial abstention is appropriate where (1) "the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency," or (2) "granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress."[5]  Alvarado, 153 Cal. App. 4th at 1298. Abstention is warranted under the first ground when "granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency." Id.  Courts have abstained on the second ground when the equitable relief requested would result in a network of injunctions that "would have the cumulative effect of a statutory regulation, administered by the . . . courts through the medium of contempt hearings." Diaz v. Kay-Dix Ranch, 9 Cal. App. 3d 588, 599 (Cal. Ct. App. 1970).

_____

[4] Plaintiff argues that the abstention doctrine does not reach its claims under the CLRA and the Elder Abuse Act because those claims are legal causes of action. MTD Opp'n at 7.  However, Plaintiff fails to mention that he is seeking both legal and equitable remedies through his CLRA claim.

[5] California courts may also abstain "when federal enforcement of the subject law would be more orderly, more effectual, [or] less burdensome to the affected interests," Alvarado, 153 Cal. App. 4th at 1298; however, that scenario is not relevant here.

United States District Court
For the Northern District of California

### a.  **Complex economic policy**

As to the first prong of the abstention doctrine, Defendant argues that Plaintiff is asking the Court to assume the functions of CDSS.  MTD at 5.  Defendant argues that Plaintiff's understaffing allegations are predicated on a California regulation, 22 Cal. Code Regs. § 87411(a), that requires residential care facilities for the elderly ("RCFE") to employ staff in sufficient numbers, "and competent to provide the services necessary to meet resident needs."  Id.  Defendant contends that determining whether its facilities comply with section 87411(a) requires expertise and case-by-case evaluation that are better left to CDSS.  Id.  Moreover, according to Defendant, "[t]he constantly changing requirements of the residents served by [Defendant's] communities would mean virtually continuous court scrutiny over potentially tens of thousands of staffing decisions each and every day."  Id. at 7.

In support, Defendant cites to the California Court of Appeal's decision in Alvarado.  In that case, the plaintiff asserted a UCL claim based on the defendant's alleged failure to provide sufficient direct nursing care for the residents of its skilled nursing facilities ("SNF") in violation of California Health & Safety Code section 1276.5(a).  Alvarado, 153 Cal. App. 4th at 1296.  The court held that abstention was proper, reasoning that section 1276.5(a) was a regulatory statute that the legislature intended the Department of Health Services ("DHS") to enforce.  Id. at 1304.  The court also found that DHS was better equipped to evaluate compliance with the statute's 3.2 nursing-hours-per-patient-per-day ("NHPPD") requirement, which implicated a

host of specialized determinations, including whether the facility at issue was a special treatment program service unit, whether certain employees' hours counted toward the requirement, and what formula should be used to calculate nursing hours. Id. at 1305-06. Defendant contends that Plaintiff's claims would require an even higher level of agency expertise since section 87411(a) does not set forth objective standards, such as staff per resident per hour, but merely requires a "sufficient number[]" of "competent" staff. MTD at 6-7.

Plaintiff responds that Alvarado's holding was subsequently limited by Shuts v. Covenant Holdco LLC, 208 Cal. App. 4th 609 (Cal. Ct. App. 2012). MTD Opp'n at 8. In Shuts, the trial court relied on Alvarado in sustaining the defendant's demurrer to the plaintiff's claims for violations of section 1276.5(a)'s NHPPD requirement. 208 Cal. App. 4th at 618-19. The court of appeal reversed because the plaintiff's claims were based on California Health and Safety Code section 1430, a statute which was never invoked by the plaintiff in Alvarado. Id. at 619. The court found that section 1430(b) conferred a private right of action for the violation of a SNF resident's right to reside in a facility with an adequate number of qualified personnel. Id. at 619-20. The court also found that Alvarado's concern with rendering complex economic policy decisions was no longer pertinent. Id. at 622. Since Alvarado was decided, DHS's successor agency "ha[d] made significant progress in providing administrative guidance on the 3.2 NHPPD standard, and how it should be calculated." Id.

Plaintiff's reliance on Shuts is misplaced. Shuts's outcome turned on the court's interpretation of section 1430(b), which

United States District Court
For the Northern District of California

1   provides a private right of action for residents of SNFs, but not

2   for residents of the RCFEs at issue here.  Further, while

3   California may have provided significant administrative guidance

4   with respect to section 1276.5(a)'s NHPPD requirement, no such

5   guidance exists as to section 87411(a).  It is entirely unclear how

6   CDSS determines whether a RCFE is sufficiently staffed in

7   accordance with the statute, and the Court is ill-equipped to

8   develop its own framework for making such a determination.

9        Plaintiff suggests that the Court can use Defendant's wE Care

10  system to determine compliance with section 87411(a)'s staffing

11  requirements.  MTD Opp'n at 9.  But the Court could not enforce an

12  injunction by blindly relying on the outputs of the wE Care system.

13  It would need to make an independent determination of whether the

14  staffing levels provided by wE Care were sufficient to meet the

15  needs of Defendant's residents.  Such a determination is beyond the

16  Court's expertise.

17       Accordingly, the Court abstains from Plaintiff's claims for

18  equitable relief to the extent that they are predicated on alleged

19  violations of section 87411(a).  Plaintiff argues some aspects of

20  his UCL and CLRA claims are not predicated on section 87411(a), and

21  that the Court should not abstain from deciding those aspects of

22  his claims.  MTD Opp'n at 7.  He contends that the gravamen of this

23  case is that Defendant represents that it staffs its facilities to

24  meet the aggregate needs of its residents, but it actually

25  determines staffing levels based on profit objections.  Id.  Thus,

26  Plaintiff reasons that establishing liability for these

27  misrepresentation claims does not require regulatory interpretation

28  or proof that Defendant violated section 87411(a).  Id.  Defendant

United States District Court
For the Northern District of California

responds that the abstention doctrine "addresses whether the remedy for a violation should be devised, monitored[,] and enforced administratively by [an agency] or judicially by the courts, not whether the applicable regulations determine liability in the first place."  Reply at 4 (internal quotations omitted).  Defendant further argues that the Court could not administer the remedy without assuming CDSS's role in determining whether staffing is sufficient to meet resident needs.

The Court agrees with Defendant.  As Plaintiff concedes in his opposition brief, his claims stem from the allegation that Defendant fails to staff its facilities to meet the aggregate assessed needs of its residents.  See MTD Opp'n at 7.  Thus, there is no way for the Court to craft an equitable remedy without first establishing what those aggregate assessed needs are.  This question necessarily requires an analysis of section 87411(a).  To put it another way, Plaintiff essentially alleges that Defendant represented that it would comply with 87411(a) by staffing its facilities to meet the aggregate needs of its residents, but has failed to do so.  See FAC ¶ 33.  The promise allegedly encompassed by Defendant's standard contracts -- that residents "will receive[] the services appropriate to [their] individual needs" -- is identical to the requirements of section 87411(a) -- that "[f]acility personnel shall at all times be sufficient in numbers, and competent to provide the services necessary to meet resident needs."  Cal. Code Regs. tit. 22, § 87411(a).  Thus, the Court cannot enforce the contractual promise through an injunction without assuming the role of a state regulatory agency.

In short, the Court is ill-equipped to make complex policy

1  determinations about the aggregate assessed needs of Defendant's
2  residents.  CDSS has already been tasked with making such
3  determinations, and the Court declines to second-guess its
4  judgment.

5                    **b.    Undue burden on the trial court**

6        Abstention is also warranted here because "injunctive relief
7  would place an unnecessary burden on the court because of the
8  existence of other, more effective remedies."  Alvarado, 153 Cal.
9  App. 4th at 1302.  As Defendant points out, CDSS already has the
10 tools and authority necessary to address what Plaintiff asks the
11 Court to regulate by injunction.  Id.  By statute, any person may
12 request an inspection of an RCFE.  Cal. Health & Safety Code §
13 1569.35.  If a state investigator determines that a deficiency
14 exists and the deficiency is not corrected by the date specified by
15 CDSS, the RCFE may be fined up to $150 per day until the deficiency
16 is corrected.  Cal. Code Regs. tit. 22, §§ 87759, 87761.  In
17 certain instances, CDSS may also revoke the license of a RCFE if a
18 deficiency is not corrected.[6]  Id. § 87775.

19       By comparison, it would be unduly burdensome for the Court to
20 establish a system for regulating Defendant's seventy-two
21 California facilities.  The staff and resources of CDSS presumably
22 dwarf that of any monitor the Court could appoint.  The court-
23 appointed monitor might need to respond to resident complaints, as
24 well as set aggregate staffing levels for each individual facility,
25 levels which change constantly.  Such regulatory activities are

26 ─────────────────
[6] This process has already been invoked at the facility where
27 Plaintiff currently resides.  After Plaintiff was attacked by
   another resident in January 2011, CDSS investigated and issued a
28 deficiency for understaffing.  FAC ¶ 59.

**United States District Court**
For the Northern District of California

1  beyond the scope of the Court's expertise.  The Court is not
2  prepared to assume responsibility for ensuring that the needs of
3  Defendant's 5,000 California residents are being met on a daily
4  basis.

5         **3.**   **Conclusion**

6      For these reasons, and the reasons set forth above, the Court
7  abstains from adjudicating Plaintiff's UCL claim.  The Court also
8  abstains from adjudicating Plaintiff's CLRA claim, but only to the
9  extent that Plaintiff seeks equitable relief in connection with
10  that claim.  The Court does not abstain from adjudicating
11  Plaintiff's claims for legal relief.[7]

12     **C.**   **CLRA**

13      Defendant argues that the Court should dismiss the remainder
14  of Plaintiff's CLRA claim because: (1) Plaintiff cannot couch a
15  routine breach of contract claim as a CLRA claim to obtain extra-
16  contractual remedies, (2) the misrepresentations identified by
17  Plaintiff are non-actionable puffery, and (3) Plaintiff has failed
18  to plead affirmative misrepresentations or omissions with
19  sufficient particularity.

20      Defendant's first argument is predicated on principles
21  developed in the UCL context that are sometimes applied to CLRA
22  claims.  California courts have held that a breach of contract may
23  form the predicate for a UCL claim, but only if the breach also
24  constitutes conduct that is unlawful, unfair, or fraudulent.  Arce
25  v. Kaiser Found. Health Plan, Inc., 181 Cal. App. 4th 471, 489

---

26  [7] The Court recognizes that Plaintiff's CRLA claim, to the extent
27  that it seeks legal relief, is also based on understaffing allegations
     that may implicate issues of complex economic policy.  However, as
28  set forth above, California's judicial abstention doctrine does not
     allow the Court to abstain from hearing such a claim.

**United States District Court**
For the Northern District of California

(Cal. Ct. App. 2010).  With respect to the unfairness prong of the UCL, "a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL."  Id. (internal quotations omitted).  Similar to the UCL, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Applying UCL principles, Courts have held that a breach of contract is not actionable under the CLRA without proof of more, for example, where a defendant knowingly sells a defective product.  Baba v. Hewlett-Packard Co., C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010).

The Court finds that Plaintiff has alleged something more than a breach of contract here.  Specifically, Plaintiff has alleged that Defendant publicly touted its ability to meet the individual needs of its residents, even though staffing decisions were based on profit margins.  Plaintiff has also alleged a systematic breach of Defendant's standard resident contracts.  In light of Defendant's allegedly standardized contracts, the compromised capacities of many of Defendant's residents, the fact that many of these residents are dependent on Defendant for basic services and may not be in a position to complain once they are under Defendant's care, and the difficulties associated with transitioning to a different RCFE, the Court finds that Plaintiff has alleged sufficient facts to state a claim for a violation of the CLRA.  In short, Plaintiff has sufficiently alleged that

**United States District Court**
For the Northern District of California

1  Defendant engaged in unfair competition by making

2  misrepresentations to a vulnerable class of consumers.

3       As to its second argument, Defendant contends that the alleged

4  misrepresentations underlying Plaintiff's CLRA claim are non-

5  actionable puffery.  MTD at 11-12.  Puffery is "exaggerated

6  advertising, blustering, and boasting upon which no reasonable

7  buyer would rely."  Southland Sod Farms v. Stover Seed Co., 108

8  F.3d 1134, 1145 (9th Cir. 1997).  "The distinguishing

9  characteristics of puffery are vague, highly subjective claims as

10 opposed to specific, detailed factual assertions."  Haskell v.

11 Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).  A

12 representation "that amounts to 'mere' puffery is not actionable."

13 Id.  The Court agrees that a few of the representations mentioned

14 in the FAC are puffery, including the representations that the wE

15 Care system is "state of the art," and that Defendant's services

16 are "high quality."  See FAC ¶¶ 26, 27.  However, Plaintiff's CLRA

17 claim is also based on allegations that Defendant represents that

18 it uses the wE Care system to determine staffing levels, and that

19 Defendant provides "enough staff to care for all of the residents

20 at its facilities based on the residents' evaluations."  See e.g.,

21 id. ¶¶ 21, 30.  These statements are not vague or generalized, and

22 their truth can be objectively determined.  Accordingly, the Court

23 declines to dismiss Plaintiff's CLRA claims on puffery grounds.

24      Defendant's third argument is that Plaintiff's CLRA claim

25 should be dismissed for failure to comply with the heightened

26 pleading standard of Rule 9(b), which requires that the

27 circumstances constituting fraud be pleaded with particularity.

28 MTD at 17.  Defendant considers several allegations in isolation,

United States District Court
For the Northern District of California

1   while ignoring others.  Defendant has lost the forest for the

2   trees.  The sufficiency of Plaintiff's allegations must be based

3   upon the complaint as a whole.  Lima v. Gateway, Inc., 710 F. Supp.

4   2d 1000, 1007 (C.D. Cal. 2010).  The Court finds that, taken as a

5   whole, the FAC asserts sufficient facts to support a claim under

6   the CLRA.

7       Defendant argues that Plaintiff failed to plead that he saw or

8   relied on Defendant's website and marketing materials.  MTD at 21.

9   However, the absence of such allegations is not fatal to

10  Plaintiff's claim because Plaintiff does allege that he read and

11  relied on Defendant's standard contract.  Also lacking merit is

12  Defendant's argument that Plaintiff has failed to allege that he

13  would have behaved differently had the omitted information been

14  disclosed.  See MTD at 23.  It is plausible that Plaintiff would

15  have chosen a different assisted living facility had he known about

16  the actual staffing practices at Defendant's facilities.

17       Defendant also argues that Plaintiff has not established

18  that it had any duty to disclose the manner in which it staffs its

19  facilities.  Id. at 22.  The Court disagrees.  In its form

20  contracts, Defendant represents that it will provide different

21  levels of care depending on a resident's needs, that it will

22  develop a service plan based on the resident's evaluation, and that

23  residents will receive services appropriate to their individual

24  needs.  FAC ¶ 21.  These representations are contradicted by facts

25  Defendant allegedly failed to disclose: that Defendant does not use

26  evaluations to set staffing levels, but sets them using

27  predetermined corporate labor budgets.  Id. ¶ 33.  These

28  allegations are sufficient to support a duty to disclose.  See

**United States District Court**
For the Northern District of California

1  <u>Donahue v. Apple, Inc.</u>, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012)

2  (actionable omission must be contrary to the representation made by

3  the defendant).  Based on Plaintiff's allegation that Defendant had

4  a consistent staffing policy, FAC ¶¶ 33-41, it is also plausible

5  that Defendant was aware of the omitted facts at the time it made

6  the representations.

7      Accordingly, the Court declines to dismiss Plaintiff's CLRA

8  claim to the extent that it does not seek equitable relief.

9      **D.   <u>Elder Financial Abuse</u>**

10      Defendant moves to dismiss Plaintiff's third and final claim

11  for elder financial abuse.  Financial abuse of an elder occurs when

12  a person or entity "takes, secretes, appropriates, obtains, or

13  retains real or personal property of an elder."  Cal. Welf. & Inst.

14  Code § 15610.30(a)(1).  A person or entity engages in elder abuse

15  when an elder "is deprived of any property right, . . . regardless

16  of whether the property is held directly or by a representative of

17  an elder or dependent adult."  <u>Id.</u> § 15610.30(c).

18      Defendant argues that Plaintiff's claim fails because Ms.

19  Moulton, who is not an elder, represented Plaintiff as his agent

20  via power of attorney in the relevant transactions.  MTD at 14-15.

21  The fundamental problem with this argument is that Ms. Moulton did

22  not have anything to do with Plaintiff's initial contract for

23  services with Defendant.  Plaintiff entered into that contract on

24  his own.  <u>See</u> ECF No. 33 Ex. 1 ("Resident Agreement") at 23.

25  Defendant contends that Plaintiff's claims are not based on his

26  original contract, but the amendments to his service plan signed by

27  Ms. Moulton that increased his Level of Care.  MTD at 15.  But many

28  aspects of Plaintiff's claims pre-date Ms. Moulton's involvement,

**United States District Court**
For the Northern District of California

1  including his general allegation that Defendant does not staff its

2  facilities to meet the aggregate needs of its residents.  In any

3  event, Plaintiff's allegations support a plausible inference that

4  Plaintiff expected that Defendant's services would increase with

5  his assigned Level of Care when he initially entered Defendant's

6  facility.

7       Next, Defendant argues that a standard breach of contract

8  claim cannot support a claim for financial elder abuse.  MTD at 16.

9  This argument is substantially similar to an argument the Court

10 addressed and rejected regarding Plaintiff's CLRA claim.  <u>See</u> §

11 III.C <u>supra</u>.  For the reasons set forth above, the Court finds it

12 unavailing.

13      Accordingly, the Court declines to dismiss Plaintiff's claim

14 for financial elder abuse.

15

16 **IV.  <u>MOTION TO STRIKE</u>**

17      Defendant moves to strike Plaintiff's class allegations

18 pursuant to Federal Rule of Civil Procedure 12(f).  Rule 12(f)

19 provides that a court may, on its own or on a motion, "strike from

20 a pleading an insufficient defense or any redundant, immaterial,

21 impertinent, or scandalous matter."  Motions to strike "are

22 generally disfavored ... [and] are generally not granted unless it

23 is clear that the matter sought to be stricken could have no

24 possible bearing on the subject matter of the litigation."  <u>Rosales</u>

25 <u>v. Citibank</u>, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001).

26      Class allegations typically are tested on a motion for class

27 certification, not at the pleading stage.  <u>See</u> <u>Collins v. Gamestop</u>

28 <u>Corp.</u>, C10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6,

2010).  However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Thus, some courts have struck class allegations where it is clear from the pleadings that class claims cannot be maintained.  E.g., Sanders v. Apple Inc., 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009).

Defendant's lead argument is that the facts of this case are similar to those in Dennis F. v. Aetna Life Insurance, 12-cv-02819-SC, 2013 WL 5377144 (N.D. Cal. Sept. 25, 2013), where the undersigned recently denied class certification.  MTS at 5.  Dennis F. is distinguishable.  In that case, the plaintiff sought to represent a class of adolescents who had been denied insurance coverage for care at residential treatment centers.  2013 WL 5377144, at *2.  The Court denied class certification on the ground that Plaintiff's claims were predicated on medical necessity determinations unique to each individual class member.  Id. at *4. In contrast, this case turns on whether Defendant misrepresented the staffing levels maintained at its facilities.

Next, Defendant argues that Plaintiff's claim that understaffing endangered or resulted in substantial harm to the class is not appropriate for class adjudication.  MTS at 10.  That may be so, but as Defendant concedes, Plaintiff "does not seek recovery for personal injuries, emotional distress or bodily harm that may have been caused by Defendant or by inadequate staffing at Defendant's facilities."  FAC ¶ 64.  Defendant contends that if Plaintiff is not seeking to recover for the alleged personal injuries, those allegations should be struck from the complaint.

**United States District Court**
For the Northern District of California

MTS at 13.  However, Defendant cannot credibly contend that these allegations are irrelevant.  Evidence of personal injuries at Defendant's facilities may help support Plaintiff's claims that those facilities are understaffed.  In any event, pleadings may properly allege facts that do not directly support a claim for relief where they provide necessary or informative background.

Defendant further argues that Plaintiff does not and cannot satisfy the typicality or adequacy requirements of Rule 23(a).  <u>Id.</u> at 13-15.  Here, Defendant rehashes a number of arguments from its motion to dismiss.  The Court declines to revisit those arguments again.  In any event, typicality and adequacy raise factual issues not appropriate for determination at the pleadings stage.

Finally, Defendant argues that the proposed class is not ascertainable because it includes every resident of Defendant's California communities, including those who have received all of the services they contracted for with Defendant.  <u>Id.</u> at 16-17.  Once again, Defendant raises factual questions not appropriate for resolution at the pleading stage.  Moreover, to the extent that Defendant's argument has merit, the Court need not deny class certification altogether.  Instead, it could potentially certify a narrower class than the one proposed by Plaintiff.  Whether or not this is feasible or necessary is a question for another day.

In sum, the Court finds that Defendant's motion to strike Plaintiff's class allegations is premature.  The motion is DENIED in its entirety.

///

///

///

**V.    CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  The Court abstains from adjudicating Plaintiff's UCL claim, as well as the equitable remedies sought through his CLRA claim.  Plaintiff's other claims remain undisturbed.  Defendant's motion to strike is DENIED.


IT IS SO ORDERED.


March 5, 2014

UNITED STATES DISTRICT JUDGE

United States **District Court**
For the Northern District of California