UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVILLE WINANS,<br><br>    Plaintiff,<br><br>    v.<br><br>EMERITUS CORPORATION,<br><br>    Defendant. | Case No. 13-cv-03962-SC   (JCS)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 73 |

    Defendant Emeritus Corp. has issued subpoenas to four non-party healthcare providers seeking "[a]ny and all documents regarding any treatment or care of [Plaintiff] Arville J. Winans . . . that occurred from July 29, 2009 through the present." Plaintiff objects to their production and seeks an Order quashing the subpoenas, a protective order, and an order directing Defendant to destroy records that were prematurely produced in response to the Subpoenas. *See* Dkt. No. 73 (parties' joint letter regarding discovery) ("Letter").

**I.    DISCUSSION**

    The Federal Rules of Civil Procedure broadly authorize the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The standard for permissible discovery thus contains two key limitations: the matter must be both "relevant" and "nonprivileged." *See, e.g., Dowell v. W.T. Griffin,* 275 F.R.D 613, 617 (S.D.Cal. Aug. 17, 2011).

    **A.    Relevance**

    "Relevant information need not be admissible at trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly to include "any matter that bears on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1987).

Defendant asserts that Plaintiff's medical records are relevant: (1) to rebut Plaintiff's "claims for economic loss, which are grounded in the theory that [Defendant] failed to provide the care determined by its resident evaluations, thus putting [P]laintiff and other residents in physical jeopardy," Letter at 3; (2) to contest whether this case meets the requirements for class treatment, "including predominance, adequacy, and typicality," *id.* at 4; (3) to prove the actual level of care Defendant provided was the level it promised in its resident agreements and marketing materials, (4) to disprove Plaintiff's claim that Defendant's misrepresentations about its staffing, if any, were material. *Id.*

Plaintiff argues that Plaintiff's "medical condition and the extent of any injuries sustained while at [Defendant's facilities] are not at issue" and that the "case turns on whether Defendant misrepresented the staffing levels maintained at its facilities." Letter at 2 (quoting Dkt. No. 53). Plaintiff emphasizes that he is not seeking damages for personal injuries. *Id.*; FAC ¶ 64 ("This action does not seek recovery for personal injuries, emotional distress or bodily harm that may have been caused by misrepresentations made by Defendant or inadequate staffing at Defendant's facilities").

Plaintiff is incorrect—Plaintiff's medical condition and injuries are relevant—based on the decision by the District Judge in this case. *See* Dkt. No. 53. In disputing what it describes as Defendant seeking to "frame this case as one in which the Court will need to make an individualized inquiry in the care needs and medical condition of each resident," Plaintiff references and relies on Judge Conti's partial denial of Defendant's Motion to Strike. Letter at 1-2; *see* Dkt. No. 53. Judge Conti's decision supports Plaintiff's argument that this case "hinges on whether Emeritus misrepresented or failed to disclose the manner in which it uses, or does not use, its resident evaluation system," Letter at 2, but equally undermines Plaintiff's argument that the medical records at issue are irrelevant. The Court determined that allegations of personal injury, whether or not appropriate to class certification, "cannot credibly be contend[ed to be] irrelevant"

2

to Plaintiff's claims that Defendant's facilities are understaffed. Dkt. No. 53 at 24-25. It follows that Plaintiff's medical records which bear on those injuries must now be considered relevant as well.

### B. Privilege

Next the Court must consider whether the requested medical records are subject to an unwaived privilege. Rule 26(b) explicitly excludes privileged matters from discovery. Fed. R. Civ. P. 26(b)(1). "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *see also Star Editorial, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 7 F.3d 856, 859 (9th Cir. 1993). Plaintiff brings only state law claims, *see* FAC, and thus California's law of privilege controls. Under California law, Plaintiff's communications with his doctors and medical history are protected by the doctor-patient privilege. *See* Cal. Evid. Code §§ 990, *et seq.* Accordingly, Defendant's ability to obtain discovery of Plaintiff's medical history in this case turns on whether Plaintiff waived his privilege. Defendant claims Plaintiff has waived this privilege, and Plaintiff contends he has not.

"[A] patient can waive her privilege if she puts her medical history and otherwise privileged communications at issue by" making legal claims such that the information is "directly relevant" to the litigation. *Plumlee v. Pfizer, Inc.*, 13-CV-00414-LHK, 2014 WL 690511 (N.D. Cal. Feb. 21, 2014); *see* Cal. Evid. Code §§ 996 (patient-litigant exception to physician-patient privilege); *see also Tylo v. Superior Court,* 55 Cal. App. 4th 1379, 1387 (1997) (by bringing suit plaintiff waives privilege as to information that is "*directly relevant* to the litigation"). To be "directly relevant" in the context of privileged information is a higher standard than the relevance standard applied to discovery of non-privileged information, which may include information that is "reasonably calculated to *lead to* the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1) (emphasis added). In contrast, discovery of privileged information

> cannot be justified solely on the ground that it may lead to relevant information. And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy.
>
> . . .

> Even where the balance . . . weighs in favor of disclosure . . . the scope of such disclosure . . . must be drawn with narrow specificity.

*Bd. of Trustees v. Superior Court*, 119 Cal. App. 3d 516, 525 (Cal. Ct. App. 1981) (citations omitted). The Court thus considers Defendant's discovery requests in the context of Plaintiff's claims in order to determine if the information sought would be directly relevant and admissible; if so, whether Defendant's need outweighs Plaintiff's fundamental right to privacy; and finally, whether the sought disclosures are drawn narrowly.

In order to prove a California Legal Remedies Act ("CLRA") claim, as Plaintiff brings here, Plaintiff must prove at least that Defendant made a misrepresentation or omission of information and that the misrepresentation or omission was "material"—*i.e.*, Plaintiffs must be able to show that had the misrepresented or omitted information been accurately disclosed, Plaintiff and other residents would have been aware of it and behaved differently. *See, e.g.*, *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005). To determine that Plaintiff waived his privilege, the Court needs only to consider the relevance of Plaintiff's medical record to the materiality and falsity of the alleged misrepresentation regarding how Defendant determines its staffing levels.

The records at issue are directly relevant to falsity and materiality. In this case, Defendant will endeavor to disprove the truth of the allegations, and to disprove materiality, by showing that its staffing levels were adequate and that there was no increased risk of injury caused by allegedly reduced staffing levels. To prove this absence of risk, Defendant's experts may rely on actual experience: *i.e.*, what staffing level gave rise to what injuries.

Plaintiff's own allegations admit that allegations of actual injury are relevant to this case. Plaintiff explicitly argues that two allegations of injury in the First Amended Complaint—that Plaintiff was assaulted by another resident and received injuries to his head and face, FAC ¶ 59; and that Emeritus' failure to use its resident evaluation system to determine staffing created a substantial risk of harm evidenced by a variety of physical ailments and staffing failures,[1] FAC ¶

---

[1] Plaintiff listed the evidence of harm as including but not limited to, "increased falls; development of decubitus ulcers that go undetected and/or untreated; increased urinary tract infections; medication errors; failures to follow physician's orders; failures to notify family members of serious changes in a resident's condition; unhygienic and unsafe conditions; lack of

4

46—"demonstrate the materiality of the misrepresentation/failure to disclose." Letter at 2, 4. Having argued that they support a necessary element of its CLRA claim, Plaintiff has clearly put the alleged injuries "at issue" and waived privilege as to medical records that prove or disprove them. This supports Judge Conti's decision that "[e]vidence of personal injuries at Defendant's facilities may help support Plaintiff's claims that those facilities are understaffed," Dkt. No. 53 at 24-25, opening the door for Defendant to defend against understaffing claims using evidence showing a lack of personal injuries. That is, Defendant may use evidence of a lack of personal injuries among residents to dispute that it in fact made a misrepresentation or omission about its staffing level.

Together, Judge Conti's determination that personal injuries may prove understaffing and Plaintiff's argument tying evidence of personal injuries to materiality weigh heavily in favor of the compelling need for discovery and against Plaintiff's right of privacy. In particular, despite Plaintiff's repeated insistence that this case "turns" on Defendant's misrepresentations (as opposed to evidence of Plaintiff's injuries), Plaintiff's choice to directly put evidence of injuries at issue in order to prove materiality tips the balance in favor of allowing the requested discovery.

Finally, though the boundaries of the waiver and the disclosure of private material "must be drawn with narrow specificity" *see Bd. of Trustees v. Superior Court*, 119 Cal. App. 3d 516, 526 (Cal. Ct. App. 1981), in this instance Plaintiff's encompassing description of the potential injuries caused by understaffing, FAC ¶ 46, preclude narrowing Defendant's request to any particular sub-category of records—other than as already narrowed by Defendant to records created during the class period.

## II. PRODUCTION SUBJECT TO PROTECTIVE ORDER

The Court finds that Plaintiff's privacy concerns and constitutional right to privacy warrant

---

assistance with grooming, dressing and bathing; no response or long response times to call lights; inadequate attention to toileting needs, resulting in incontinence; residents left for long periods of time in wet or dirty adult briefs; inadequate provision of water, leading to dehydration; failures to assist with feeding, leading to significant weight loss and/or choking; physical, sexual and/or emotional abuse of residents by caregivers and/or other residents; resident elopement; and premature death." FAC ¶ 46.

ensuring that the produced medical records be secured from public disclosure. The Court orders that all medical records produced subject to this order be marked "CONFIDENTIAL" and accordingly be subject to the protections of the parties' Stipulated Protective Order. *See* Dkt. Nos. 61, 62.

The Court hereby OVERRULES Plaintiff's objections to Defendant's subpoenas, Letter at 1, DENIES Plaintiff's motion to quash, DENIES Plaintiff's motion for a protective order against production, and DENIES Plaintiff's request for an order directing destruction of medical records thus-far produced in response to the subpoenas.

**IT IS SO ORDERED.**

Dated: July 14, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge