Kate Wilkins
3663 Branch Court
Oceanside, CA 92058
Phone: (760) 966-1941    Email: kbwilkins@cox.net

August 4, 2015

Clerk of the Court
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 1 – 17th Floor
San Francisco, CA 94102

    Re:    *Arville Winans v. Emeritus Corp. and DOES 1 through 100*
            Case No. 3:13-cv-03962-SC (N.D. Cal)

Dear Clerk:

I object to the proposed Settlement. The allegations in this case involve serious violations involving elder financial abuse and breaches of California regulations related to staffing levels in assisted living facilities. Many of these allegations trigger minimum penalties of $1,000 or $5,000, and could give rise to liability well beyond those minimal amounts for individual class members. Yet approval of this settlement would forever release the Defendants from liability related to related claims over nearly a six year period, from July 29, 2009 to May 15, 2015. In exchange for this huge release from liability, each class member will receive a paltry settlement check for approximately $450.00. This amount will only be based on a small percentage of the move-in fee and first month's rent paid by each class member, and will allow for no adjustment or discrimination between residents who lived in the facility the entire six years, or only six weeks or less. Class counsel are requesting fees of nearly $5 million for their work here, which includes a bonus on the rates their already high lodestar suggests they might have earned, of $2,610,489.75. This settlement is unfair to the class, and I would like to request that the court deny approval of this settlement.

### A. The notice is misleading in several respects.

The notice fails to inform class members that Emeritus is now a wholly owned subsidiary of Brookdale Senior Living, one of the defendants in this case. As noted in the Second Amended Complaint, Brookdale and Emeritus concluded a merger in July of 2014. Many facilities formerly identified as Emeritus facilities have been renamed Brookdale facilities, so class members, and the public at large, might not understand that this class action against Emeritus raised concerns that apply at Brookdale facilities as well. Because of the timing of the merger, Brookdale is essentially getting a clean slate from the allegations in this case by renaming or rebranding its facilities. Consumers wanting to check into the reputation of the assisted living facility they are contemplating making their home are not likely to realize that the same management team responsible for the misrepresentations alleged in this lawsuit are likely still in place at Brookdale facilities. At the very least, the court should require the parties send a new round of notice to class members that includes an explanation that Brookdale and Emeritus merged, and that although many of the facilities will now be identified under the Brookdale umbrella, Emeritus was merged into Brookdale rather than being put out of business.

### B. This case is not appropriate for class action treatment.

This case should not be approved as a class action because the individual claims of each class member are unique, so class treatment is totally inappropriate. Although Emeritus and Brookdale may have made similar misrepresentations to class members, the economic impact of those misrepresentations differs significantly among class members. The principal wrongs identified in the lawsuit relate to the companies' failure to provide individualized care to residents; instead staffing levels were devised to make a profit rather than based on individual residents' care needs. Ironically, the attorneys are guilty of the same wrong: in seeking approval of this class action settlement (so they can get attorneys' fees based on all class members rather than just their individual clients) they are grouping together dissimilar individuals with dissimilar claims and limiting those individuals' recoveries in an extremely unfair way.

As noted in the Second Amended Complaint, the violations here are substantial. Individual violations of Cal. Civ. Code §1780(b) have statutory penalties ranging from $1,000 to $5,000 (Second Amended Complaint ¶ 101-102), and each class member may have many potential related violations they could pursue against Emeritus and Brookdale. This is not a case where potential individual recoveries are so small that class action treatment is the only way claims can be addressed. Yet the parties have agreed to a settlement whereby class members will be compensated with a paltry $450 payment – far less than most of them are entitled to.

In addition, some class members may have lived at one of the Emeritus/Brookdale assisted living facilities for six or more years, while others may have only been in one of the facilities for a few weeks, or less. The individuals who lived in the facilities for several years suffered ongoing damages, ongoing neglect, ongoing abuse . . . and may be entitled to significant damages accrued during long-term residency in the facilities. Shockingly, these individuals will receive the same compensation as a class member who only spent a few weeks at a Brookdale or Emeritus facility. Moreover, the fact that the damages assessments are only based on move-in fees and first months' rent is unfair to those long term residents. Moreover, even if it were fair to base damages on only the move-in payments (based on some odd limitation of liability that doesn't seem relevant given the broad nature of the release), the move-in payments class members made also differed significantly. The first month's rents are not the same across the whole range of facilities in California and monthly rates in some of the more expensive facilities may be several times the rates of the less expensive facilities.

These obvious differences in damages and claims among class members indicates that certification of a single class would violate principles regarding class certification enunciated by the U.S. Supreme Court. The Supreme Court recently clarified some of the requirements for class action treatment in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013). Writing for the majority, Justice Scalia noted:

> The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442

U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. ——, ——, 131 S.Ct. 2541, 2551–2552, 180 L.Ed.2d 374 (2011). . . .

The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). The provision at issue here is Rule 23(b)(3), which requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members."

In *Comcast*, Justice Scalia determined that class treatment was not appropriate because "respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.*

That is exactly the issue here, where individuals are likely to have multiple claims for damages that are not being taken account of in the settlement. As in *Comcast*, plaintiffs have "f[allen] far short of establishing that damages [were] capable of measurement on a classwide basis," and "[q]uestions of individual damage calculations w[ould] inevitably overwhelm questions common to the class." *Id. Cf. also Wal-Mart Stores, supra.*

### C. The class notice has not informed me as to the identity of the cy pres recipient of funds that could not be distributed to class members.

It is certain that a large number of the checks sent out to class members will not be cashed. Unfortunately, based on the demographics of the settlement class (largely senior citizens living in assisted living facilities) many of the class members will have passed away. Particularly as the time period covered by this suit extends back to 2009, it is likely that their former addresses will not be current, nor can we assume their legal representatives or executor's will still receive mail at their former addresses. Given these practical concerns, a large part of this settlement will not be distributed to the class. The *cy pres* distribution therefore is an important part of the consideration achieved for the class. First, I would prefer that the parties attempt a secondary distribution to class members that can be located. I would prefer to get the money myself rather than have it go to a third party. The class, needless to say, is not "indifferent to whether funds are distributed to them or to [third parties], and class counsel

should not be either." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013).

But if some money must go to a *cy pres* recipient, the parties should at least identify that recipient. Rather than identifying the *cy pres* recipients for the class, so class members would have an opportunity to weigh in on the choice of recipient, class counsel left this important information out of the class notice. In their Motion for Attorneys' Fees, class counsel merely stated: "Significantly, there will be no reversion of any portion of the Settlement Fund to Defendants. Rather, unused reserve funds as well as uncashed or returned checks will be distributed to *cy pres* recipient(s), nominated by Class Counsel and approved by the Court. (SS, ¶ II.A.26, p. 9; Healey Decl, ¶ 18.)" Dkt. 103, page 14

Since the parties have not identified the *cy pres* recipients, the parties have prevented both class members and the court from reviewing this essential element of the settlement prior to the fairness hearing. This falls afoul of the approach outlined in *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012). The court explained: "The difficulty here is that, by failing to identify the *cy pres* recipients, the parties have restricted our ability to undertake the searching inquiry that our precedent requires." *Id.* at 867. The Ninth Circuit has additional stringent requirements regarding the use of *cy pres* funds. The Ninth Circuit requires that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis*, at 865, *citing Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir.2011). "A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.*, *citing Nachshin* at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir.1990). Under well-established Ninth Circuit precedent, class members have a right to know the identity of the *cy pres* recipient and object if the recipient is inappropriate or does not meet the Ninth Circuit's requirements. Since the class notice does not inform us of the identity of the *cy pres* recipient, the court cannot approve this settlement.

### D. The Attorneys Fees requested are Improper

The attorneys are requesting fees of $4,168,756.91, or 32% of the settlement, which is too high. Analysis of the factors typically looked at in the Ninth Circuit to determine a reasonable fee does not support such a high percentage award. The factors looked at may include: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

In this case, plaintiffs relied heavily on information gained from disgruntled former employees in their wrongful termination cases, from a government investigation and other public information about the misconduct at Emeritus. A 2013 ProPublica/PBS "Frontline" documentary highlighted the company's many run-ins with officials regarding questionable business practices and even neglect. *See* [http://www.maherlawfirm.com/blog/2014/03/assisted-living-corporation-emeritus-focus-federal-investigation/](http://www.maherlawfirm.com/blog/2014/03/assisted-living-corporation-emeritus-focus-federal-investigation/).

The benchmark for attorneys' fees in the Ninth Circuit is 25%. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990). The attorneys have not provided grounds for awarding fees above the benchmark. Moreover, the high attorneys' fees, without clear information on the benefit to be conferred on the class (since much of the settlement will go to as yet unidentified *cy pres* recipients), also runs afoul of the guidelines found in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). In *Bluetooth* the court noted that "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.*, at 946, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998), et al. The court observed, "Collusion may

not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* (citations omitted) The court noted that the following may be signs of such impropriety: (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds," [as present here] and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947. The first and the second elements are definitely present here. Although the residual funds may not revert to the defendant, the failure to identify the *cy pres* recipient raises an additional red flag. In addition, the attorneys appear to be taking a percentage of the entire settlement fund including administration expenses. This is inappropriate under *Redman v. RadioShack Corp.*, 14-1470, 2014 WL 4654477 (7th Cir. Sept. 19, 2014).

For all of the foregoing reasons, I believe this settlement is unfair to the class and should not be approved by the court. I would like to join in all other well-founded and meritorious objections, and request the following:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

_____
Katherine Wilkins

Copies to:
Guy B. Wallace
Mark T. Johnson
Lisa Gilford

## AFFIRMATION

I, Katherine Wilkins, affirm as follows:

I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

**I Am A Legal Successor to A Class Member of the Settlement Class.**

Class Member Margaret Stanger is my mother. She resided at Brookdale Carlsbad, formerly known as Emeritus at Carlsbad, located at 3140 El Camino Real, Carlsbad CA 92008, during the month of January in 2014. She died during her residence at Emeritus.

The specific legal grounds of my objection are identified above.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 4, 2015, at Oceanside, California.

_____
Katherine Wilkins, Affirmant