UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVILLE WINANS,<br><br>    Plaintiff,<br><br>v.<br><br>EMERITUS CORPORATION,<br><br>    Defendant. | Case No. 13-cv-03962-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 102, 103 |

Pending before the Court are two motions filed by Plaintiffs Arville Winans, by and through his guardian ad litem, and Ruby Richardson, in her capacity as trustee to the Wilma F. Fritz Trust. Plaintiffs move for (1) final approval of the parties' proposed class action settlement, Dkt. No. 102, and (2) an award of attorneys' fees, costs, and named plaintiff incentive payments, Dkt. No. 103. The Court held a final fairness hearing on both motions on December 17, 2015. Dkt. No. 127. For the reasons stated below and at the hearing, the Court GRANTS both motions.

**I.   BACKGROUND**

    **A.   Litigation History**

Plaintiffs filed this action in Alameda County Superior Court on July 29, 2013. Dkt. No. 1-1. Defendant Emeritus Corp.[1] removed the action to federal court on August 27, 2013. Dkt. No. 1. Plaintiffs filed the operative Second Amended Class Action Complaint ("SAC") on April 15, 2015. Dkt. No. 93.

The following allegations are taken from the SAC. Defendant owns and operates assisted living facilities. *Id.* ¶ 13. Plaintiffs are current and former residents of Defendant's assisted living

---

[1] After the case was filed, Emeritus was acquired through merger by Brookdale Senior Living, Inc. Dkt. No. 93 ¶ 12.

facilities. *Id.* ¶¶ 9-10.  When residents move in, and periodically thereafter, Defendant conducts "wE Care" assessments to determine the care needs of residents.  *Id.* ¶ 3.  Defendant represented to potential residents, their family members, and the general public that the wE Care assessments were used to assign each resident a "Level of Care"—which impacted the price charged to residents for the promised care—and to determine facility staffing.  *Id.* ¶¶ 3-4.  Plaintiffs allege that such representations were misleading because, in actuality, staffing—and therefore the level of resident care—was based on labor budgets and profit objectives.  *Id.* ¶ 5.  Plaintiffs further allege that they would not have agreed to live at Defendant's facilities, and would not have paid new resident fees and monthly charges to Defendant, if they had known the truth about the staffing procedures.  *Id.* ¶ 7.  On the basis of these factual allegations, Plaintiffs assert claims under the California Consumers Legal Remedies Act and the California Financial Elder Abuse statute.  *Id.* ¶¶ 85-114.

The parties settled the case on March 11, 2015 after participating in mediation.  Dkt. No. 102 at 5.  On June 5, 2015, the Court granted preliminary approval of the settlement, provisionally certified a settlement class, and directed notice to class members through mail, media publication, and website posting.  Dkt. No. 99.  Notice was completed on June 30, 2015.  Dkt. No. 108 ¶¶ 4-6.

Based on an objection dated July 31, 2015, the parties determined that residents whose move-in dates preceded the date Defendant took over operations of their facility ("Carry Over Residents") should be included in the settlement.  Dkt. No. 116-2, Minnick Decl. ¶¶ 4-5.  The parties further agreed to slight modifications to the amount of the overall settlement fund and the request for attorneys' fees, so that the average minimum payment to class members would not be affected by the expansion of the class.  Dkt. No. 116-2, Healey Decl. ¶¶ 3-4.  At a hearing on September 25, 2015, the Court directed further notice to the Carry Over Residents, Dkt. No. 117, which notice was completed on October 9, 2015, Dkt. No. 122-1 ¶ 3.

Notice was mailed to a total of 21,277 class members.  *See* Dkt. No. 122-1 ¶ 2; Dkt. No. 116-2, Wyatt Decl. ¶ 3.  25 of those class members—or 0.12%—opted out of the settlement. Additionally, two substantive objections, including the objection regarding the Carry Over Residents, were submitted.  Dkt. Nos. 114, 115.

2

### B. Settlement Agreement

The proposed settlement will dispose of all of Plaintiffs' claims against Defendant. Dkt. No. 104, Ex. 1 ("Settlement Agreement"). The Settlement Agreement defines the class as:

> Plaintiffs and all similarly situated persons who resided at one of the California assisted living facilities owned and/or operated by Defendants under the Emeritus name from July 29, 2009 through and including May 15, 2015 (the "Class Period"), and who contracted with Emeritus for services for which Emeritus was paid money.

*Id.* at 5. Under the terms of the Settlement Agreement, Defendant will (1) pay $13,500,000;[2] (2) completely phase out the wE Care assessment system by December 31, 2015; and (3) issue a written directive to each assisted living community it owns or operates in California to not make affirmative representations to prospective residents that the wE Care system is used to determine facility staffing. *Id.* at 21-25. In exchange, settlement class members will release all claims "arising out of or relating to statements, representations, or failures to disclose made prior to May 15, 2015 . . . regarding the . . . advertising, marketing, promotion, or use of wE Care . . . in connection with evaluating residents and setting facility staffing." *Id.* at 19. The Settlement Agreement further clarifies that the released claims "shall not include any claims for personal injuries, emotional distress or bodily harm." *Id.*

Settlement class members are not required to submit a claim; rather, they will be entitled to a pro rata payment based on the amount of move-in fees and initial monthly rent they paid.[3] *Id.* at 24. A class member, or his/her legal successor, may make a distribution request if the settlement administrator is unable to locate his/her current address. *Id.* at 7. If the settlement administrator is unable to locate a class member, his/her payment will be allocated back into the settlement fund. *Id.* at 24. A reserve fund of $45,000 will be carved out of the settlement fund for the payment of

---

[2] The Settlement Agreement filed on the docket reflects a total payment amount of $13,000,000. *See* Settlement Agreement at 10. After the parties agreed to include the Carry Over Residents in the settlement class, the parties further agreed to increase the gross settlement payment to $13,500,000. Dkt. No. 116-2, Healey Decl. ¶ 3.

[3] Specifically, the "Settlement Payment Percentage" is calculated by adding the move-in fee paid and the initial monthly rent paid, and dividing that amount by the total move-in fees and initial rent payments made by all settlement class members. Settlement Agreement at 24.

late-submitted distribution requests. *Id.* at 9. Any portion of the reserve fund that is not claimed, and any settlement checks that are not timely cashed, will be paid to the *cy pres* recipient, the Institute on Aging. Dkt. No. 129 ("Supp. Brief") at 1.

### C. Objections To The Settlement

Two substantive objections to the proposed class action settlement were timely filed.[4] First, William Finch submitted a notice of objection dated July 31, 2015. Dkt. No. 114. Mr. Finch "object[s] to the settlement to the extent it excludes me, and others like me." *Id.* Based on Mr. Finch's objection, the parties revised the settlement to expand the class and increase the total cash settlement amount. *See* Dkt. No. 116 ("Final Approval Reply") at 9-10. At the hearing on September 25, 2015, the Court ordered additional notice and time for objections based on the revised settlement agreement. *See* Dkt. No. 117.

Second, Kate Wilkins submitted an objection dated August 4, 2015. Dkt. No. 115. Ms. Wilkins objects to several aspects of the proposed settlement agreement, including the adequacy of notice, amount of the settlement, appropriateness for class action treatment, *cy pres* payment, and amount of requested attorneys' fees. *Id.* The merits of Ms. Wilkins' objection are addressed below.

## II. DISCUSSION

### A. Motion for Final Approval of Class Action Settlement

#### 1. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess whether a proposed settlement comports with Rule 23(e), a district court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v.*

---

[4] As noted at the hearing, the Court finds that the objection letter submitted by David H. Brands is without substance because it does not address the merits of this particular settlement. *See* Dkt. No. 125. Additionally, the parties confirmed at the hearing that the letter submitted to the Court by Brian P. Klinker is a distribution request, and that the parties forwarded Mr. Klinker's letter to the settlement administrator to ensure that he would be included in the settlement. *See* Dkt. No. 121.

4

1 *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "[T]he decision to approve or reject a
2 settlement is committed to the sound discretion of the trial judge." *Id.* When making this
3 decision, courts consider the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* at 1025.

### 2. Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, the class claims, class members' right to exclude themselves from the class, and the binding effect of any class judgment. Fed. R. Civ. P. 23(c)(2)(B). Additionally, before granting final approval of a proposed class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* 23(e)(1). While Rule 23 requires that "reasonable effort" be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

The Court previously approved the notice and notice plan proposed by the parties. Dkt. No. 99 ¶ 14. Additionally, the Court directed notice to the Carry Over Residents after the expansion of the settlement class based on Mr. Finch's objection. *See* Dkt. No. 117. In accordance with the Court's orders, the settlement administrator mailed the approved notice to 21,277 individuals, published the notice in USA Today, and posted the notice online. Of the 3,070 notice packets returned as undeliverable, 1,511 were re-mailed to updated addresses located by the settlement administrator. Dkt. No. 122-1 ¶ 4.

In her objection, Ms. Wilkins argues that the class notice was misleading because it failed

to inform recipients that Defendant is now owned by Brookdale Senior Living, Inc. Dkt. No. 115 at 2. The Court finds that such information was not necessary to provide adequate notice. Moreover, Brookdale's acquisition of Emeritus is public knowledge. *See* SAC ¶ 12.

Ms. Wilkins also appears to argue that the class notice was deficient because it did not identify the proposed *cy pres* recipient. Dkt. No. 115 at 4-5. While Ninth Circuit authority makes clear that the parties must identify the proposed *cy pres* recipient for the Court to evaluate, *see infra*, no such authority establishes that a specific *cy pres* recipient must be identified in the class notice. In the absence of Ninth Circuit case law directly on point, the Court finds persuasive the Third Circuit's holding that the "failure to identify the *cy pres* recipients [to class members in the class notice] is not a due process violation." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013); *see also Zeisel v. Diamond Foods, Inc.*, No. 10-cv-01192-JSW, 2012 WL 4902970, at *2 (N.D. Cal. Oct. 16, 2012) (approving settlement where parties did not identify *cy pres* recipient in class notice).

In light of the above, the Court finds that the notice and notice procedures used here complied with the requirements of Rule 23(e).

### 3. Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate, the Court next considers whether the settlement as a whole comports with Rule 23(e).

#### a. Strength of Plaintiff's Case and Risk of Continued Litigation

Approval of a class settlement is appropriate when plaintiffs must overcome "significant barriers" to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-

6

MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotation marks omitted).

While Plaintiffs maintain that they would be likely to prevail on the merits of their case, they face substantial challenges in continued litigation. First, it is not clear that Plaintiffs could successfully maintain class certification throughout the litigation. Defendant argues that Plaintiffs' claims require individualized consideration of care services provided to each resident. If individualized issues pervade the factual analysis such that no common questions of law or fact exist, class certification cannot be maintained. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556-57 (2011).

Second, even if Plaintiffs successfully certified a class, they would face obstacles to prove both liability and damages. As to liability, Defendant argues that Plaintiffs cannot show reliance because the decision to live at Defendant's facilities was impacted by a variety of factors aside from the wE Care assessments. As to damages, Defendant argues that any recovery by Plaintiffs must be reduced by the value of the care actually received. The Court agrees that Plaintiffs faced substantial risks to succeeding on the merits of their claims.

Finally, even if Plaintiffs prevailed, this litigation likely would have taken years to complete. Given the advanced age of many of the class members, any delay to recovery presents heightened concerns.

The Court finds that these factors weigh in favor of settlement.

### b. Settlement Amount

This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. 13-cv-02376-EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks omitted).

Plaintiffs calculate that the gross settlement amount represents approximately 33.2% of the "maximum projected 'hard damages' at trial," which in turn means that the net settlement amount

7

represents approximately 21.7% of the maximum recovery. Dkt. No. 102 ("Mot.") at 12.[5] Additionally, Plaintiffs estimate that the individual payments will range from 20-40% of each class member's maximum damages, *id.* at 13, and the projected average payment will be over $500, Final Approval Reply at 3. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within the range of reasonableness in light of the risks and costs of litigation. *See Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (granting final approval of a net settlement amount representing 13.6% of the plaintiffs' estimated maximum recovery at trial); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' estimated maximum recovery at trial).

    Additionally, only a small portion—if any—of the gross settlement amount will be paid to the parties' proposed *cy pres* recipient, the Institute on Aging. The organizational mission of the Institute on Aging is to "enhance the quality of life for adults as they age by enabling them to maintain their health, well-being, independence, and participation in the community." Dkt. No. 129-1 ¶ 9. The Institute runs an Elder Abuse Prevention Program aimed at protecting elders from potential financial abuse and consumer protection violations in Northern California. *Id.* The Court finds that the required "driving nexus between the plaintiff class and the *cy pres* beneficiaries" exists here. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).

    Accordingly, this factor weighs in favor of approval.

### c. Stage of Proceedings

"This factor evaluates whether the parties have sufficient information to make an informed decision about settlement." *Larsen v. Trader Joe's Co.*, No 11-cv-05188-WHO, 2014 WL

---

[5] These percentages are based on the original gross settlement amount of $13 million and the class exclusive of the Carry Over Residents. The parties confirmed at the final fairness hearing on December 17, 2015 that the revised settlement amount and class scope maintained these rough percentages.

8

3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotation marks omitted). "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (internal quotation marks omitted). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (internal quotation marks omitted).

Here, prior to reaching a settlement, Plaintiffs engaged in extensive motion practice, substantial investigation, and informal and formal discovery. Dkt. No. 104, Healey Decl. ¶¶ 12-13. Plaintiffs reviewed tens of thousands of pages of documents related to the action, conducted interviews, responded to formal discovery requests, and defended a deposition of Plaintiff Winans' guardian ad litem. *Id.*

The Court finds that Plaintiffs had an adequate understanding of the merits of their case before settlement negotiations began. Accordingly, this factor weighs in favor of approval.

### d. Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class' interests in this action. Dkt. No. 99 ¶ 5. The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that this factor tilts in favor of approval, even though the Court affords only modest weight to the views of counsel.

### e. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). A small number of objections to and opt-outs from a settlement "presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

Here, the overwhelming majority of settlement class members reacted favorably to the proposed settlement. Of the 21,277 class members who were mailed notice, only 25 opted out of the settlement. Dkt. No. 122-1 ¶ 4. Moreover, only two substantive objections were filed, one of which—Mr. Finch's objection regarding the inclusion of Carry Over Residents in the settlement class—has been fully resolved. The remaining objection submitted by Ms. Wilkins asserts three arguments against approval of the settlement.

First, Ms. Wilkins contends that that the allegations in the complaint "trigger minimum penalties of $1,000 or $5,000," and protests that the average settlement payment of $450 is therefore "paltry." Dkt. No. 115 at 1. However, only $1,000 in statutory damages is available as a matter of right to prevailing parties, and some courts have construed that amount to be shared amongst all class members. *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 593 (C.D. Cal. 2011). A court may award up to $5,000 per class member in additional damages under the CLRA, but any such award is purely discretionary. Cal. Civ. Code § 1780(b). Additionally, Ms. Wilkins does not appear to have taken into account the above-described risks of protracted litigation when she assessed the reasonableness of the average settlement payment.

Second, Ms. Wilkins contends that the Court should not certify a class for settlement purposes because "[t]he principal wrongs identified in the lawsuit relate to the companies' failure to provide individualized care to residents; instead staffing levels were devised to make a profit rather than based on individual residents' care needs." Dkt. No. 115 at 2. As a result, she argues, individual issues predominate. Plaintiffs argue in their reply brief that Ms. Wilkins misunderstands the "primary damage relief sought" in this case, which is "the recovery of initial rent payments and rental deposits . . . that residents would not have paid but for Defendants'

10

1  actionable conduct." Dkt. No. 116 at 3. In other words, the damages stem from class members'
2  reliance on Defendant's uniform misrepresentations, not individualized deviations from promised
3  levels of care. Plaintiffs further contend that the Settlement Agreement preserves class members'
4  ability to bring claims based on individualized issues, such as neglect or abuse. *Id.* at 2-3. The
5  Court finds that the settlement class is properly certified here.

6  Third, Ms. Wilkins argues that the parties must identify the *cy pres* recipient. Dkt. No. 115
7  at 4-5. Ms. Wilkins correctly notes that the Ninth Circuit has directed courts to carefully review
8  pre-certification settlements to ensure that *cy pres* distributions are "tethered to the nature of the
9  lawsuit and the interests of the silent class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 867
10 (9th Cir. 2012) (internal quotation marks omitted). To enable the Court to conduct this review, the
11 parties must identify the *cy pres* recipient. *Id.* While the Court agrees with Ms. Wilkins on this
12 point, the parties have mooted this objection by identifying the Institute on Aging as the *cy pres*
13 recipient in the supplemental briefing submitted to the Court. *See* Dkt. No. 129.

14 The Court finds that this factor weighs in favor of approval. Although Ms. Wilkins makes
15 reasoned arguments in her objection, they ultimately fail. Additionally, the overwhelming
16 majority of the class did not object to or opt out of the settlement.

17                                    *    *    *

18 After considering and weighing all of the above factors, the Court finds that the proposed
19 class action settlement is fair, adequate, and reasonable, and that the settlement class members
20 received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action
21 settlement is granted.

22   **B.    Attorneys' Fees and Costs**
23       **1.    Legal Standard**
24 "In a certified class action, the court may award reasonable attorney's fees and nontaxable
25 costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Because
26 California law governed the claim here, it also governs the award of attorneys' fees. *See Vizcaino*
27 *v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).
28 Under California law, "the award of attorney fees is proper . . . if (1) plaintiffs' action has

resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 317-18 (1983) (internal quotation marks omitted). Moreover, certain provisions of the CLRA mandate payment of attorneys' fees to successful plaintiffs. *See* Cal. Civ. Code § 1780(e). Based on these criteria, and the parties' agreement, the Court finds that class counsel is entitled to attorneys' fees.

Additionally, class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

### 2. Class Counsel's Request for Fees

Under California law, courts have the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons. *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). The two primary methods for determining reasonable fees in the class action settlement context are the "lodestar/multiplier" method and the "percentage of recovery" method. *See Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001); *accord Hanlon*, 150 F.3d at 1029.

The Court first considers the lodestar method. The first step in the lodestar analysis is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly billing rate. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may apply a multiplier to the lodestar if warranted after the consideration of certain enhancement factors like (1) the results obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary to litigate the case; (4) the preclusion of other employment due to acceptance of the case; and (5) whether the fee is fixed or contingent. *See Serrano*, 20 Cal. 3d at 48.

Here, class counsel calculated total lodestar fees of $2,686,519.75 based on 5,106.9 total hours worked as of September 18, 2015. Dkt. No. 116-1 at 1. The Court has reviewed class counsel's time records and billing reports, and finds that the number of hours devoted to this case

1  was reasonable. The Court further finds that the billing rates used by class counsel to calculate the
2  lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable
3  experience, skill, and reputation.

4  Furthermore, the Court finds that the *Serrano* enhancement factors support the requested
5  1.36 lodestar multiplier. Class counsel achieved significant benefits for the settlement class
6  members. As detailed above, the amount of the settlement is substantial in light of the risks of
7  continued litigation. Moreover, class counsel secured important nonmonetary benefits for the
8  class members. *See Vizcaino*, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred
9  by the litigation are a relevant circumstance [in determining fee awards]."). Defendant has agreed
10 to completely phase out the wE Care assessment program and cease all alleged misrepresentations
11 concerning its use. The Court finds that the injunctive relief encompassed in the Settlement
12 Agreement carries a substantial value above and beyond the value of the cash class members will
13 be paid.

14 As described above, this case involved complex issues of both fact and law that presented
15 significant risks. Despite those risks, class counsel prosecuted this case on a contingent basis,
16 agreeing to advance all necessary expenses and knowing that they would only receive a fee if there
17 were a recovery. Dkt. No. 104, Stebner Decl. ¶ 13. Moreover, class counsel had to forego other
18 work in order to devote the requisite amount of time, resources, and energy to handle this
19 demanding matter. *See id.* ¶ 10. Given Defendant's vigorous opposition, class counsel's skills
20 and experience were essential to obtaining a settlement.

21 Finally, the Court finds that the reasonableness and propriety of the requested fee award
22 are confirmed by a cross-check based on the percentage of the gross settlement amount obtained.
23 The agreed-upon fee here represents approximately 27.2% of the cash value of the settlement.
24 While this percentage is slightly above the "benchmark" percentage of 25% applied in the Ninth
25 Circuit, the Court finds that it is reasonable in light of the additional nonmonetary benefits secured
26 by class counsel and the other enhancement factors considered above.

27 The Court finds that the requested attorneys' fees of $3,667,065.82 are fair, reasonable,
28 and justified. Accordingly, the Court grants Plaintiffs' motion for attorneys' fees.

### 3. Class Counsel's Request for Costs

Class counsel originally sought reimbursement of $121,243.09 in "litigation expenses necessary for the investigation, prosecution, and settlement of this action." Dkt. No. 103 at 20. After being prompted by the Court at the December 17, 2015 final fairness hearing, class counsel submitted itemized cost records. *See* Dkt. Nos. 128-128-4. The Court has thoroughly reviewed the submitted records, which evidence reasonable costs incurred as follows: $3,807.15 by Denton US; $18,809.59 by Janssen Malloy; $3,465.40 by the Law Offices of Michael D. Thamer; $37,948.56 by Stebner & Associates; and $23,617.55 by the Arns Law Firm. *Id.* Because Schneider Wallace Cottrell Konecky Wotkyns did not submit supplemental cost records, the Court assumes that it maintains its original request for $35,074.16 in costs. *See* Dkt. No. 104, Wallace Decl. ¶¶ 32-36 & Exs. D-E. The Court finds these itemized costs to be reasonable and accordingly awards class counsel total costs of $122,722.41.

### 4. Plaintiffs' Incentive Award

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate a plaintiff's incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977 (internal quotation marks omitted). In the Ninth Circuit, a $5,000 incentive award is "consistent with the amount courts typically award as incentive payments." *In re Toys-R-Us Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.").

Plaintiffs request a service award of $7,500 to Plaintiff Winans, by and through his guardian ad litem, Renee Moulton, and a service award of $3,500 to Plaintiff Ruby Richardson as trustee of the Wilma F. Fritz Trust. Dkt. No. 103 at 20. These awards represent 0.05% and 0.03% of the gross settlement value, respectively. Plaintiffs subjected themselves to public attention and

14

potential retaliation by acting as named plaintiffs.  Moreover, they assisted in drafting the complaint and responding to discovery.  *See* Dkt. No. 104, Stebner Decl. ¶ 31.  Finally, Ms. Moulton, acting as guardian ad litem, prepared and appeared for deposition, and participated in settlement discussions.  *Id.*  In light of Plaintiffs' service to the class, the Court finds that the requested service awards are fair and reasonable.

## III.   CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court grants final approval of the proposed settlement and plan of administration.

2. The Court awards class counsel $3,667,065.82 in attorneys' fees.

3. The Court awards class counsel $122,722.41 in costs.

4. The Court grants service awards of $7,500 to Plaintiff Winans, by and through his guardian ad litem, Renee Moulton, and $3,500 to Plaintiff Richardson, as trustee of the Wilma F. Fritz Trust.

5. The class members who requested to opt out of the settlement are excluded from the class.

6. This action is hereby dismissed with prejudice, with each side to bear its own attorneys' fees and costs, except as provided in the Settlement Agreement.

7. The parties shall file a proposed judgment within three days of the date of this Order.

**IT IS SO ORDERED.**

Dated: 1/11/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

15